**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0664-17T2

FEDERAL NATIONAL
MORTGAGE ASSOCIATION
(Fannie Mae), a Corporation
Organized and Existing Under the
Laws of the United States of
America,

      Plaintiff-Respondent,

v.

MARTHA H. CLEAVES,
GRAHAM R. CLEAVES, TD BANK
NATIONAL ASSOCIATION, STATE
OF NEW JERSEY, UNITED STATES
OF AMERICA,

      Defendants.

_____

AC PROPERTY INVESTMENTS, LLC,

      Appellant.

_____

Argued October 15, 2018 – Decided  December 11, 2018

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. F-045874-13.

Rajeh A. Saadeh argued the cause for appellant.

Richard P. Haber argued the cause for respondent (McCalla Raymer Leibert Pierce, LLC, attorneys; Richard P. Haber and Jessica A. Berry, on the brief).

PER CURIAM

Plaintiff Federal National Mortgage Association foreclosed upon certain property, and appellant AC Property Investments, LLC (AC) tendered a successful bid for $297,000 at the sheriff's sale. AC deposited $60,000, slightly more than the required twenty percent of the bid, but eight days later, advised plaintiff it would not proceed with the sale. AC asserted that its principal had entered the property with permission of the current occupant and discovered the removal of a load-bearing wall, which made the structure "unsound and . . . extremely dangerous." AC demanded return of its deposit and suggested plaintiff schedule a resale.

Plaintiff refused, noting the standard conditions of sale indicated the property was sold "as is." It asserted there is no authority or requirement for a

2

lender or prospective purchaser to enter the property prior to the sheriff's sale to ascertain its condition. In response, AC again refused to complete the sale.

Although recognizing it could seek confirmation of the sale, plaintiff, instead, "elected to ask the [c]ourt to reschedule the sale and have the deposit money forfeited to pay for the costs of resale." In response, AC cross-moved to vacate the sale and release the deposit. The judge issued a preliminary decision and gave the attorneys an opportunity to object by way of oral argument. AC's argument focused solely on disposition of its deposit.[1]

After considering the arguments, the judge issued a written opinion, concluding the parties' mutual consent constituted good cause to vacate the sale. The judge rejected AC's argument that its discovery of an alleged structural defect after the sale permitted the return of the deposit, noting the "issue" was "fortuitously discovered," and "in normal circumstances the problem would not have been noticed until AC had paid the balance in full, and . . . would not have had any right to relief." The judge also rejected AC's request that she fix an upset limit of $297,000 at any subsequent sheriff's sale, noting, "setting the upset price is a business decision within the purview of the plaintiff." She explained that the "forfeiture of AC's deposit due to a lower upset price or lack of

---

[1] AC has provided only the notice of cross-motion it filed.

successful bidder, is a consequence of AC failing to meet its contractual obligation."

The judge entered a conforming order vacating the sale by consent of the parties and ordering the sheriff to "initially retain [AC's] deposit." The order further provided that plaintiff's "measure of damages shall be the deficiency between the bid at second sale and the bid at the first, plus the costs of the first sale, including [s]heriff's costs for the first sale. Any remaining funds shall be returned to the third[-]party bidder who failed to close." AC filed this appeal.[2]

AC argues it was entitled to vacation of the sale, independent of plaintiff's consent, and therefore the judge erred by not releasing the deposit. We disagree and affirm.

Courts of equity have the power to vacate foreclosures sales based on considerations of equity and justice. Crane v. Bielski, 15 N.J. 342 (1954). "[T]he exercise of this power is discretionary. . . ." First Trust Nat. Assoc. v. Merola, 319 N.J. Super. 44, 49 (App. Div. 1999) (citing Crane, 15 N.J. at 349).

---

[2] Our review is limited to the September 15, 2017 order, which is the only order contained in AC's notice of appeal. AC's appendix contains material that was not before the court prior to entry of this order, including the court's subsequent orders and decisions denying AC's motion to stay release of the funds to plaintiff, and plaintiff's motion to enforce the September 15, 2017 order. We do not consider them.

A-0664-17T2

The power to vacate a foreclosure sale is limited to situations where there is "fraud, accident, surprise, irregularity in the sale, and the like, making confirmation inequitable and unjust to one or more parties." Crane, 15 N.J. at 346 (quoting Karel v. Davis, 122 N.J. Eq. 526, 530 (E. & A. 1937)). "[A] judicial sale is not ordinarily vacated 'on the ground of mistake flowing from [a moving party's] own culpable negligence.'" Merola, 319 N.J. Super. at 49 (quoting Karel, 122 N.J. Eq. at 528).

None of the cases cited by plaintiff supports the proposition that a successful bidder may be relieved of its obligations because of the condition of the property first discovered after the sale. Rather, in Midfirst Bank v. Graves, 399 N.J. Super. 228, 230-32 (Ch. Div. 2007), the court refused to grant a successful bidder relief after it discovered significant vandalism to the property upon inspection two days after the sale. Here, we adopt the rationale of the Chancery Division in Graves, id. at 232-36, and conclude AC's post-sale discovery of an alleged structural defect provided no grounds for relief.

AC also contends the standard conditions attached to the sheriff's sale did not advise that the property was being sold "as is." Even if that is accepted practice, AC asserts New Jersey long ago rejected the doctrine of caveat emptor, see, e.g., Strawn v. Canuso, 140 N.J. 43, 54-56 (1995) (detailing evolution of

5

the doctrine's demise), and, therefore, AC was entitled to vacate the sale and have its deposit returned. We disagree.

Initially, nothing in the record indicates AC failed to understand the property was being sold "as is." Indeed, AC's appendix includes not only the sheriff's standard conditions for sale, which do not include the phrase, but also a copy of information on the sheriff's website, which explicitly states the sale is subject to caveat emptor, "let the buyer beware."[3]

Moreover, we have explained that prior to enactment of N.J.S.A. 2A:61-16, "a foreclosure sale, like any other judicial and execution sale, was subject to the doctrine of caveat emptor . . . ." Summit Bank v. Thiel, 325 N.J. Super. 532, 538 (App. Div. 1998). The statute provides limited relaxation of the doctrine in circumstances inapplicable to this case. See N.J.S.A. 2A:61-16 (providing relief from a bid if "there is a substantial defect in or cloud upon the title of the real estate sold, which would render such title unmarketable, or the existence of any lien or encumbrance" which was not appropriately disclosed prior to, or at, the sale).

---

[3] Plaintiff's appendix includes a certification from its agent at the sheriff's sale. He asserts the sheriff orally advised all bidders at the sale that the property was being sold "as is." It is unclear whether this certification was before the judge.

A-0664-17T2

We reject any invitation from AC to change the current state of the law for at least two reasons. First, as plaintiff notes, the mortgagee in foreclosure does not own the property and may have limited or no right to access it; as a result, the mortgagee's knowledge of the property's condition is not necessarily superior to the bidder's knowledge. Graves, 399 N.J. Super. at 235. One premise supporting our courts' rejection of caveat emptor was the unequal status of buyer and seller, given the seller's likely superior knowledge of the condition of the property. Strawn, 140 N.J. at 55-56 (citations omitted).

Removing the condition of caveat emptor from judicial sales would have a significant effect on the mortgage industry, real estate investors, and our county sheriffs. Graves, 399 N.J. Super. at 235. "As a court of intermediate [] jurisdiction, we do not presume to adopt [principles]" with widespread impact, and leave such decisions to our Supreme Court. See, e.g., Tannen v. Tannen, 416 N.J. Super. 248, 272 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011) (citing cases).

AC's true focus is on the provisions of the order that required retention of the deposit monies and a formula for their ultimate disposition. It argues that because plaintiff eschewed confirmation of the sale, and the judge vacated it by consent, there was no basis for retention. We disagree.

A-0664-17T2

Reading the judge's decision in its entirety, we are satisfied she rejected all arguments advanced by AC that would have relieved it of the obligation to close, and specifically found AC had breached its "contractual obligation" to close the sale within thirty days. See, e.g., Inv'rs & Lenders v. Finnegan, 249 N.J. Super. 586, 592 (Ch. Div. 1991) ("[T]he high bidder [at a judicial sale] is awarded the property based on [its] promise to pay and the making of the required deposit as security for compliance. If [it] does not pay [, it] has breached [its] contract."). Since damages, if any, were unknown at the time, the judge devised a formula in contemplation of a future resale.

As we see it, and as plaintiff concedes, nothing in the judge's order foreclosed AC from challenging the release of the monies based upon future events. Furthermore, all arguments raised by AC regarding plaintiff's actual damages or any failure to mitigate damages were premature when briefed.

To the extent we have not otherwise addressed AC's arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0664-17T2